UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:11-CV-00450-TBR

BRIAN SADLER and MICHELLE SADLER,                        Plaintiffs
Individually and on behalf of their Minor Child, B.S.

v.

ADVANCED BIONICS, LLC                                               Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Advanced Bionics, LLC's Motion to Limit the Testimony of Plaintiffs' Expert Harold Pellerite. (ECF No. 119.) Plaintiffs Brian and Michelle Sadler, individually and on behalf of their minor child B.S., have responded, (ECF No. 139), and Defendant has replied, (ECF No. 159). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion will be SUSTAINED IN PART and DENIED IN PART.

I.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

Page 1 of 14

>   (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (alteration and internal quotation marks omitted) (quoting *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001) (applying *Daubert*, 509 U.S. 579, 597 (1993)); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999))). The Court must determine whether evidence proffered under Rule 702 "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. A key consideration is "whether the reasoning or methodology underlying the testimony is sufficiently valid." *Id.* at 592-93. The Supreme Court advises that the inquiry is "a flexible one," and that "[t]he focus . . . must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 594-95. A testifying expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. But *Daubert* did not impose any new standard, other than that already found in the Federal Rules of Evidence, for the admissibility of the testimony of nonscientific expert witnesses. *See id.*; *see also United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995) (noting that *Daubert* did not impose a new standard other than what is already set out in the Federal Rules of Evidence "for the admissibility of the testimony of nonscientific experts such as . . . real estate appraisers"); *United States v. Starzecpyzel*, 880 F. Supp. 1027, 1040-41 (S.D.N.Y. 1995) (same).

Despite that there is no "definitive checklist or test" for meeting the standard of Rule 702, *Daubert* laid out a number of factors that typically "bear on the inquiry,"

including: whether the theory or method in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community." *Daubert*, 509 U.S. at 593-94. Although *Daubert* addressed scientific evidence, the Supreme Court in *Kumho Tire Co. v. Carmichael* held that a trial court may consider the *Daubert* factors for all types of expert evidence. *Kumho Tire*, 526 U.S. at 150. Thus, the *Daubert* factors are nonexhaustive and may not be pertinent in cases where "the relevant reliability concerns . . . focus upon personal knowledge or experience."[1] *Id.*; *see also First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001).

The Sixth Circuit has developed further guidance on Rule 702 by recently outlining a number of "[r]ed flags that caution against certifying an expert." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). These include "reliance on anecdotal

---

[1] The Advisory Committee Notes to Rule 702 reinforce this position:

> Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded. *See, e.g.*, American College of Trial Lawyers, Standards and Procedures for Determining the Admissibility of Expert Testimony after *Daubert*, 157 F.R.D. 571, 579 (1994) ("[W]hether the testimony concerns economic principles, accounting standards, property valuation, or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field.").

Fed. R. Evid. 702 advisory committee's note (2000 amend.).

evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* (citing *Best*, 563 F.3d at 177). Also, that a purported expert's testimony was prepared solely for litigation may also be grounds for exclusion. *Id.* (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007)).

Where the testimony of a proffered expert is challenged for insufficient "factual basis, data, principles, methods, or their application . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [his or her] discipline." *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). The Court need not necessarily hold a *Daubert* hearing to determine the admissibility of expert testimony but, nonetheless, must ensure that the disputed testimony is both relevant and reliable. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000). Generally, "a trial judge . . . ha[s] considerable leeway in deciding whether particular expert testimony is reliable," *Kumho Tire*, 526 U.S. at 152; *accord Conwood*, 290 F.3d at 792; *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000), and his decision regarding the admissibility of expert testimony is reviewed for abuse of discretion, *see Kumho Tire*, 526 U.S. at 142; *Newell Rubbermaid*, 676 F.3d at 527; *Hardyman*, 243 F.3d at 258; *see also Tamraz v. Lincoln Electric Co.*, 620 F.3d 665, 672 (6th Cir. 2010) ("Rule 702, we recognize, does not require anything approaching absolute certainty. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." (internal citations omitted)).

II.

Plaintiffs' expert Harold Pellerite is offered as an expert in FDA regulatory matters. Pellerite worked for nearly thirty years in the FDA's Office of Compliance, Center for

Devices and Radiological Health, which is responsible for enforcing laws and regulations relating to the marketing of medical devices in the United States. (*See* Docket No. 140.) At the FDA, Pellerite held various positions related to complaint handling and medical device reporting between 1976 and 1984. In 1984, he was appointed as Assistant to the Director of the FDA's Office of Compliance. He held that position until his retirement from the FDA in 2005. Pellerite states that during that time, he was responsible for the day-to-day operations of the Office of Compliance, as well as for reviewing and approving FDA regulatory actions such as recalls, warning letters, untitled letters, and civil money penalties. He also states that during that time, he was directly involved in developing FDA regulatory and enforcement strategies associated with the requirements for medical devices. He has prepared a lengthy expert report in this matter and has been deposed on several occasions.

Pellerite proposes to offer seven opinions in this matter. (*See* Docket No. 140.) Those opinions, in brief, are as follows:

> (1) Defendant failed to manufacture devices that met the specifications described in their submissions to the FDA. Defendant also failed to notify the FDA, Plaintiffs, or Plaintiffs' doctors of a change in an outside supplier or vendor (*i.e.*, AstroSeal).
> (2) Defendant failed to meet the industry standards for "Design Validation" as required by 21 C.F.R. § 820.30(g) by not testing devices under actual or simulated conditions.
> (3) Defendant did not comply with the FDA's "Quality System Regulations." FDA inspection reports as well as internal and external audit reports showed numerous deficiencies in Defendant's quality system, but Defendant did not take appropriate steps to remedy those deficiencies.
> (4) Defendant's executive management failed to adequately implement improvements or corrections to Defendant's quality system in response

      to warnings, and management failed to adequately staff quality system functions.

(5) Defendant failed to adequately track, trend, monitor, or investigate complaints associated with AstroSeal feedthrus as required by FDA regulations. Had Defendant followed appropriate tracking and trending procedures for complaints associated with hermeticity problems, it readily would have identified that the majority of failures were associated with AstroSeal feedthrus.

(6) Defendant failed to adequately qualify and monitor its suppliers, including AstroSeal, as required by FDA regulations, to ensure that the products received from its suppliers conformed to specification and performed as expected.

(Docket No. 140; *see also* Docket No. 139, at 5-6.)

Defendant moves to exclude or limit Pellerite's proposed testimony on three broad grounds. First, Defendant argues that Pellerite's irrelevant and unreliable opinions will not assist the trier of fact. (*See* Docket No. 119-1, at 2.) Second, Defendant argues that Pellerite's unqualified, speculative *ipse dixit* opinions about vendors, hermeticity investigation, testing, defect, and causation should be excluded. In this regard, Defendant also moves to exclude certain opinions and statements by Pellerite as impermissible legal conclusions. (Docket No. 119-1, at 2, 21-23.) Third, Defendant broadly moves to exclude Pellerite's opinions under Fed. R. Evid. 403 on the basis that any probative value of those opinions is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury. (Docket No. 119-1, at 2, 23-24.) The Court will address each of these challenges in turn.

A.

Defendant first argues broadly that Pellerite's irrelevant and unreliable opinions will not assist the trier of fact. In this regard, Defendant reasons that (1) "Pellerite's

narration is an impermissible vehicle for Plaintiffs to tell their story"; (2) Pellerite offers improper, irrelevant, and speculative opinions regarding Defendant's motive, ethics, and responsibility, in effect opining that Defendant is a "bad company"; and (3) Pellerite's opinions about Defendant's quality systems are vague and thus will not assist the trier of fact. (ECF No. 119-1, at 10-17.)

Defendant begins by citing a mass of nonbinding case law to support its contention that Pellerite's proposed narrative is inadmissible because it fails to embody the scientific, technical, or specialized knowledge that would assist the jury to either understand the evidence or determine a fact in issue. (ECF No. 119-1, at 11.) According to Defendant, Pellerite's testimony must be excluded because he merely summarizes and comments on various documents before jumping to a conclusion without any meaningful analysis of, or citation to, FDA regulatory requirements. (ECF No. 119-1, at 13-14.) In sum, Defendant urges that "Pellerite's 'opinions' are largely masqueraded advocacy." (ECF No. 119-1, at 12.)

In light of the Sixth Circuit's pronouncement that "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact," *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998), the Court cannot conclude that Pellerite's proposed testimony does not pass muster under Fed. R. Evid. 702. The Court has reviewed Pellerite's *curriculum vitae*, expert report, and deposition testimony, and is satisfied that Pellerite's proposed testimony has a reliable basis in his knowledge and professional experience. The Court is also satisfied that Pellerite's proposed opinions regarding FDA testing requirements, whether Defendant failed to test under actual or simulated conditions, and whether Defendant deviated from the PMA by

using the AstroSeal feedthru are relevant to Plaintiffs' remaining claims. Because those opinions are both reliable and will assist the trier of fact, exclusion is not warranted under Fed. R. Evid. 702.

Defendant next challenges Pellerite as "intend[ing] to tell the jury that it is his 'expert' opinion that Advanced Bionics is a 'bad company.'" (ECF No. 119-1, at 15.) Defendant references a number of specific terms "peppered" throughout Pellerite's report that it argues should be excluded as impermissibly speculative, personal opinions. (ECF No. 119-1, at 15.) These include the terms "disturbingly," "callously," "illegally," "recklessly," and "unconscionably." (ECF No. 119-1, at 15.) Unfortunately, Defendant neither cites to the location of these terms in Pellerite's report nor references the context in which they are used.[2] (*See* ECF No. 119-1, at 15-16.) As the Court has found in related Opinions in this matter, testimony by an expert that Defendant acted "recklessly" or "illegally," to the extent that testimony expresses a legal conclusion, is inadmissible. And terms such as "recklessly," "disturbingly," "callously," and "unconscionably" connote the sort of inadmissible personal opinion that falls beyond the proper scope of an expert's testimony. These terms also carry some personal opinion regarding Defendant's intent or motive, which is likewise inadmissible. *See Johnson v. Baker*, 2009 WL 3486000, at *5 (W.D. Ky. Oct. 23, 2009) (citing *Woodhull v. Cnty. of Kent*, 2006 WL 2228986, at *6 (W.D. Mich. Aug. 3, 2006); *United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006)) ("A

---

[2] Later paragraphs in this section of Defendant's argument cite collectively pages 25-31 of Pellerite's report, which appear at ECF No. 119-2, at 25-31. (*See* ECF No. 119-1, at 15.) The Court's review of those pages reveals only one sentence in which the objected-to terms appear: "What is disturbing is the callousness with which [Advanced Bionics] addressed the risks associated with its HiRes90K implant." (Docket No. 119-2, at 30.)

party's state of mind . . . is not within the knowledge of any expert.").[3] Thus, to the extent Pellerite's use of those terms constitutes a legal conclusion or an impermissibly subjective personal opinion, such testimony is excluded. Though not entirely clear from their Response, Plaintiffs seem to argue that Defendant's "good faith" and "learned intermediary" defenses may "open the door" to additional opinion testimony by Pellerite. (*See* ECF No. 139, at 10-11.) To the extent Plaintiffs feel that Defendant opens the door or that such testimony otherwise becomes admissible at trial, counsel may approach the Court and seek leave for its introduction.

Defendant's third contention in this section argues that Pellerite's vague opinions about Defendant's quality systems will not assist the trier of fact. (ECF No. 119-1, at 16-17.) The Court is not persuaded by Defendant's weak argument on this point and, accordingly, finds no reason to exclude or limit Pellerite's testimony on this basis.

B.

Defendant's second broad challenge asserts that Pellerite's unqualified, speculative *ipse dixit* opinions regarding vendors, hermeticity investigation, testing, defect, and causation should be excluded. (ECF No. 119-1, at 17.) Here, Defendant raises six specific

---

[3] As this Court has previously recognized, "Various courts have excluded expert testimony on issues relating to state of mind in civil cases." *Johnson*, 2009 WL 3486000, at *5. (citing *Halcomb v. Washington Metro. Area Transit Auth.*, 526 F. Supp. 2d 24 (D.D.C. 2007); *Woodhull*, 2006 WL 2228986, at *6; *Meals v. City of Memphis*, 2005 WL 5988642, at *2 (W.D. Tenn. Feb. 10, 2005)); *see also CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996) ("[An expert's] opinion regarding whether the parties *intended* to enter a [contractual] relationship was not admissible. The intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 701 . . . ."), *abrogated on other grounds by Morales v. Am. Honda Motor Co.*, 151 F.3d 500 (6th Cir. 1998); *accord In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) (holding that an expert "may not infuse his personal views as to whether [the defendant] acted ethically, irresponsibly, or . . . recklessly").

challenges: (1) Pellerite is qualified neither to give his opinion regarding simulated testing nor to comment on the design of testing protocols, and he offers no reasoned explanation for this opinion; (2) Pellerite's unqualified *ipse dixit* regarding tracking and trending should be excluded because he offers no reasoned explanation for these opinions; (3) Pellerite's *ipse dixit* regarding vendor qualifications and monitoring should be excluded because Pellerite is unqualified and because his opinions are unreliable and unsupported by reasoned explanation that will assist the trier of fact; (4) Pellerite is unqualified and should be precluded from offering his opinion that the product was "defective"; (5) Pellerite's unqualified causation opinions are inadmissible; and (6) Pellerite should be precluded from rendering improper legal conclusions by testifying that the devices were "adulterated" and "defective," that Defendant acted "unconscionably," "recklessly," or "illegally." (*See* ECF No. 119-1, at 17-23.)

In regard to Defendant's first contention—that Pellerite is not qualified to opine about simulated testing or comment on the design of testing protocols—the Court is satisfied that, based on his knowledge and professional experience, Pellerite is qualified to testify about FDA testing requirements. As the Sixth Circuit has stated, "A proposed expert witness should not be required to satisfy an overly narrow test of his own qualifications." *United States v. Barker*, 553 F.2d 1013, 1024 (6th Cir. 1977) (internal quotation marks omitted) (quoting *Garnder v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974)). The Court is further satisfied that Pellerite's knowledge of this subject area is such that his opinion will assist the trier of fact and, thus, should be admissible. To the extent Defendant seeks to challenge the depth or breadth of Pellerite's knowledge in this area or his reasoning in reaching his conclusions, the Court finds that these challenges go

more to the weight of Pellerite's testimony and are properly reserved for cross-examination.

Defendant next argues that Pellerite's unqualified *ipse dixit* regarding tracking and trending should be excluded. Upon reviewing Pellerite's expert report and proposed opinion in this regard, the Court is satisfied that Pellerite's proposed testimony is sufficiently reliable to warrant admission. This proposed opinion appears, to the Court, sufficiently grounded in Pellerite's knowledge and professional experience—that is, Pellerite offers more than a mere conclusion that he asks the Court to "take his word for." Again, Defendant's contention with this proposed testimony appears to go more to the weight of Pellerite's testimony rather than its reliability and, so, is properly suited for challenge on cross-examination.

Third, Defendant challenges Pellerite's opinion whether Defendant adequately qualified and monitored its suppliers as "unqualified *ipse dixit*." (ECF No. 119-1, at 15.) Again, the Court disagrees and finds that Pellerite is qualified to render expert testimony about FDA regulations that concern qualification requirements and testing. The Court further finds that this testimony is sufficiently grounded in Pellerite's knowledge and professional experience so as to survive challenge to its reliability. These issues, again, go more to the weight of Pellerite's testimony and are proper matters for cross-examination.

Fourth, Defendant argues that Pellerite is unqualified to opine whether a product is defective. Defendant acknowledges that "[a]lthough not one of his seven enumerated opinions explicitly so states, Mr. Pellerite makes several comments that the device was 'defective.'" (ECF No. 119-1, at 15.) A similar issue was raised and addressed by the

Court in a separate Memorandum Opinion and Order relative to Plaintiff's expert Tom Green. Consistent with that Opinion, the Court again finds that the terms "defect" and "defective" can have a distinct and specialized legal meaning in the context of products liability. To the extent Pellerite proposes to opine that the product in question was "defective," the Court finds that such an opinion is tantamount to an ultimate legal conclusion and should be excluded as such. The Court is not, however, prepared to grant Defendant a blanket exclusion of the words "defect" or "defective" in any context. While products liability frequently speaks of "defects" and "defective products," these terms are seldom used in jury instructions. Further, because "defect" and "defective" also have a common and universal meaning, the Court does not believe an expert referring to a product as being defective means the expert's opinion necessarily will be prejudicial or will confuse the jury. Therefore, Pellerite may use those terms generally in expressing his opinion. Consistent with the foregoing and with the Court's prior rulings addressing this issue, any objection to the use of those terms may be appropriately raised and addressed at trial, if necessary.

Fifth, Defendant moves to exclude certain "causation opinions" of Pellerite as speculative and unreliable. This argument, which consists of three sentences in its entirety, focuses on several statements by Pellerite that relate to the issue of causation. (*See* ECF No. 119-1, at 16.) The Court finds this argument without merit. To the extent Pellerite intends to testify about FDA regulations and the role that testing, qualification, tracking, and trending may have on device safety, the Court is satisfied he is qualified to do so and will not exclude or limit his proposed testimony on this basis.

Sixth and lastly, Defendant moves the Court to preclude Pellerite from rendering improper legal conclusions by testifying that the devices were "adulterated" and "defective," or that Defendant acted "unconscionably," "recklessly," or "illegally." (ECF No. 119-1, at 21-23.) The bulk of these challenges have been addressed either earlier in this Opinion or in the Court's prior Memorandum Opinion and Order in relation to Plaintiffs' expert Tom Green. Thus, they need not be rehashed in full again here. To the extent Pellerite proposes to testify using these terms in a way that expresses a purely legal conclusion or a personal opinion beyond the proper scope of expert testimony, such testimony is inadmissible. Consistent with the Court's contemporaneous and prior rulings on this issue, Pellerite shall not use terms such as "adulterated," "defective," "unconscionably," "recklessly," or "illegally" at trial. Should Plaintiffs feel that the use of such terms becomes admissible at trial, counsel shall approach the Court and seek leave to allow Pellerite to testify using those terms. Any further objection to the use of these or similar terms properly may be raised and addressed, if necessary, at trial.

C.

Defendant concludes its instant Motion by moving broadly to exclude Pellerite's proposed opinions on grounds that any probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury. (ECF No. 119-1, at 23-24.) In essence, Defendant summarizes and encapsulates its other objections to Pellerite under the banner of a Fed. R. Evid. 403 challenge. This argument is fleshed out over a mere three sentences with citation to a single nonbinding decision, which Defendant cites for the proposition that "Pellerite proposes to 'hijack' the role of the jury by offering his 'interpretation' of the evidence and the jurors would likely feel obligated to follow the

interpretation of the so-called 'expert.'" (ECF No. 119-1, at 23 (citing *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 1004)).) Based on the foregoing discussion, the Court finds that the probative value of Pellerite's admissible expert testimony is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, and, thus, does not warrant exclusion under Fed. R. Evid. 403.

## III.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion to Limit the Testimony of Plaintiffs' Expert Harold Pellerite, (ECF No. 119), is SUSTAINED IN PART and DENIED IN PART consistent with the foregoing Opinion.